1:25-cv-00812

FILED
HARRISBURG, PA

MAY 08 2025

PER _____
DEPUTY CLERK

Civil Cover Sheet

Plaintiff: Jordan A. Branch (Pro Se)

Address: 2612 Maplewood Drive, Harrisburg, PA 17110 (Dauphin County)

Defendants:

- Dauphin County Recorder of Deeds Office – Government office (Dauphin County, PA)

- Dauphin County – County Government (Dauphin County, PA)

- ONE Abstract LLC – Pennsylvania Limited Liability Company (Dauphin County, PA)

- Dream Home Realty – Pennsylvania Business (Cumberland County, PA)

- Realty ONE Group Unlimited – Pennsylvania Business (Lancaster County, PA)

- Lower Paxton Township – Municipal Government (Dauphin County, PA)

- Officer Morris – Police Officer, Lower Paxton Township Police Dept. (Dauphin County, PA) (in both individual and official capacities)

County of Residence of First Listed Plaintiff: Dauphin County, PA

County of Residence of First Listed Defendant: Dauphin County, PA

Basis of Jurisdiction: Federal Question (28 U.S.C. § 1331) – Civil Rights (42 U.S.C. § 1983)

Nature of Suit: 440 Civil Rights (Other)

Origin: Original Proceeding

Cause of Action: 42 U.S.C. § 1983 – Deprivation of property without due process; First Amendment retaliation; civil conspiracy; Supplemental Pennsylvania state law claims for negligence.

Requested in Complaint:

- Jury Trial: Yes, demanded on all issues.

- Injunctive Relief: Yes (to remove fraudulent lien/deed and cease false mental health classification).

Relief Sought: $2,500,000 in compensatory damages; punitive damages against individual/private Defendants; declaratory and injunctive relief as detailed in Complaint.

Related Cases: None (no prior related federal cases).

Signature: s/ Jordan A. Branch (Pro Se Plaintiff)   Date: May __, 2025

FILED
HARRISBURG, PA

MAY 08 2025

PER _____
DEPUTY CLERK

Complaint

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Jordan A. Branch,                |

Plaintiff,              | Civil Action No. _____

| (to be assigned by the Clerk)

vs.                              |

| JURY TRIAL DEMANDED

Dauphin County Recorder of Deeds |

Office;                          |

Dauphin County;                  |

ONE Abstract LLC;                |

Dream Home Realty;               |

Realty ONE Group Unlimited;      |

Lower Paxton Township;           |

Officer Morris,                  |

Defendants.                      |

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(42 U.S.C. § 1983)

Jordan A. Branch ("Plaintiff"), proceeding pro se, brings this civil action against the above-named Defendants for violations of his federal civil rights and related state law claims. Plaintiff alleges as follows:

I. Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

2. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because at least one Defendant resides in this District. The relevant property and records at issue are located in Dauphin County, Pennsylvania, which lies within this District.

II. Parties

3. Plaintiff Jordan A. Branch is a citizen of the United States and a resident of Harrisburg, Dauphin County, Pennsylvania. Plaintiff is the owner of a home remodeling business (Amon's Remodeling LLC) and at all relevant times was the owner/seller of certain real property in Dauphin County described herein. Plaintiff is a pro se litigant asserting his own rights in this matter.

4. Defendant Dauphin County Recorder of Deeds Office is a department and agent of Dauphin County, Pennsylvania, responsible for recording and maintaining public records of real estate transactions within Dauphin County. This Defendant was at all relevant times acting under color of state law through its officials and employees. The Recorder of Deeds Office's principal business address is believed to be 101 Market Street, Harrisburg, PA 17101.

5. Defendant Dauphin County is a municipal government entity (a county of the Commonwealth of Pennsylvania). Dauphin County, through its offices (including the Recorder of Deeds) and officials, is responsible for the policies, customs, and practices governing the recording of property records and the conduct of county employees. Dauphin County is a "person" within the meaning of 42 U.S.C. § 1983 and is sued directly (for municipal liability) and as the governmental entity on behalf of its Recorder of Deeds Office. Dauphin County's principal offices are in Harrisburg, PA.

6. Defendant ONE Abstract LLC is a Pennsylvania limited liability company (or similar business entity) that provided title, abstract, or real estate closing services in connection with Plaintiff's property transaction described below. Upon information and belief, ONE Abstract LLC is located at 30 W Main Street, Hummelstown, PA 17036, and conducts business in Dauphin County.

7. Defendant Dream Home Realty is a Pennsylvania real estate brokerage or company involved in the sale of Plaintiff's property. Upon information and belief, Dream Home Realty's principal business address is 2101 Market Street, Camp Hill, PA 17011 (Cumberland County, PA). Dream Home Realty participated in the real estate transaction at issue through its agents or employees.

8. Defendant Realty ONE Group Unlimited is a real estate brokerage or company that was also involved in the sale of Plaintiff's property (possibly as the listing or buyer's brokerage). Upon information and belief, Realty ONE Group Unlimited is headquartered at 415 N. Prince Street, Lancaster, PA 17603 (Lancaster County, PA), and conducts business throughout Central Pennsylvania.

9. Defendant Lower Paxton Township is a municipal government (township) in Dauphin County, Pennsylvania. Lower Paxton Township operates the Lower Paxton Township Police Department and is responsible for training, supervising, and establishing policies for its police officers,

including Defendant Officer Morris. Lower Paxton Township is a "person" under 42 U.S.C. § 1983 and is sued for its own liability under Monell (municipal liability) principles. The township's administrative offices (including the police department) are located at 425 Prince Street, Harrisburg, PA 17109.

10. Defendant Officer Morris (first name currently unknown) is a police officer employed by the Lower Paxton Township Police Department in Dauphin County. At all times relevant, Officer Morris was acting under color of state law in the course and scope of his duties as a law enforcement officer. He is sued in his individual capacity and official capacity. During the events described herein, Officer Morris engaged in conduct (phone communications with Plaintiff) that gives rise to Plaintiff's claims. The address for service for Officer Morris is 425 Prince Street, Harrisburg, PA 17109 (Lower Paxton Township Police Department).

III. Factual Allegations

11. Since 2018, Plaintiff has been subjected to ongoing harassment and misconduct by law enforcement and other officials in Dauphin County, which he believes to be retaliatory in nature. In or around 2018, Plaintiff became aware that he was being falsely categorized as having mental health issues in certain official records (law enforcement and/or medical), despite the fact that Plaintiff has never been diagnosed with any mental illness nor treated for any mental health condition. These false classifications were made without basis and have contributed to a pattern of mistreatment toward Plaintiff by authorities.

12. Plaintiff's Background and Business: Plaintiff is a self-employed businessman. He owns Amon's Remodeling LLC, a home remodeling and construction business based in the Harrisburg area. In 2022, Plaintiff's business was thriving, generating approximately $330,000 in revenue that year. Plaintiff's reputation for quality work and his financial stability were critical to his livelihood.

13. Property Sale in 2023: In or about March 2023, Plaintiff sold a residential property he owned, located at 308 Wyoming Street, Middletown, Pennsylvania, for the agreed price of $146,000. The sale was conducted through the normal course of a real estate transaction, involving real estate agents (Defendants Dream Home Realty and/or Realty ONE Group Unlimited) and a settlement company (Defendant ONE Abstract LLC) which handled the closing and paperwork. Plaintiff signed the necessary documents for the sale, which should have reflected the true purchase price of $146,000.

14. Erroneous Recording of $146,000,000 Deed: Unknown to Plaintiff at the time, the deed and/or associated transfer documents for this sale were recorded with an astronomically incorrect sale price of $146,000,000 (one hundred forty-six million dollars) instead of the actual $146,000. This false figure was entered into the official property records of Dauphin County by the Recorder of Deeds Office. The discrepancy – a factor of 1,000 times the real price – is so extreme that it is facially a mistake or fraud. This error is directly attributable to the actions of Defendants involved in preparing and recording the deed: upon information and belief, Defendant ONE Abstract LLC (and/or persons associated with Dream Home Realty/Realty ONE Group) submitted paperwork with the incorrect amount, and Defendant Dauphin County

Recorder of Deeds Office accepted and recorded the deed with this patently erroneous figure without any verification or flagging of the obvious error.

15. Fraudulent $6,000,000 Lien: As a direct consequence of the false $146 million record, Plaintiff became the subject of a fraudulent multi-million dollar lien. Specifically, upon information and belief, Dauphin County or other authorities (such as tax authorities) generated a lien of approximately $6,000,000 against Plaintiff and/or his property. This likely represented a purported claim for unpaid transfer taxes or related fees, calculated on the false $146 million sale amount. Plaintiff had never agreed to or been informed of any such lien. The lien was generated and recorded without Plaintiff's knowledge or consent and without any prior notice or due process. It effectively encumbered Plaintiff's assets based on an error and was entirely wrongful.

15A. Plaintiff reasonably believes, based on the surrounding financial inconsistencies, law enforcement inaction, and coordinated obstructions, that the inflated $146 million figure was part of a broader scheme in which outside parties—potentially business owners and/or officials—used his property and business as a vehicle to conceal or divert tax liability. Plaintiff further believes that this scheme was tied to longstanding efforts to destroy him personally and financially, and that threats to his safety may have been part of an attempt to silence him or prevent exposure.

16. Discovery of Lien and Impact on Plaintiff's Business: In 2024, Plaintiff discovered the existence of this enormous lien under alarming circumstances. While attempting to sell another property (his personal residence) or otherwise engage in a financial transaction, a title search or record check revealed the $6,000,000 lien in Plaintiff's name. Plaintiff was shocked to learn that Dauphin County had placed such a lien on his property without any justification. The discovery was devastating: Plaintiff immediately faced severe repercussions. Creditors and potential business partners viewed him as a massive credit risk, and the cloud on his title meant he could not freely sell or refinance property. In the wake of this revelation, Plaintiff's remodeling business collapsed – he was forced to shut down Amon's Remodeling LLC, which until then had been a successful enterprise. The false lien and the public record of an absurd $146 million transaction destroyed Plaintiff's business reputation and credibility in the community. The income (hundreds of thousands of dollars annually) that Plaintiff relied upon was abruptly lost. Plaintiff also suffered extreme emotional distress upon learning that his financial security had been upended by a bogus record.

17. Plaintiff Never Signed or Consented to False Documents: At no point did Plaintiff sign, authorize, or consent to any deed, affidavit, or document indicating a $146,000,000 price or a $6,000,000 lien. The fraudulent deed amount and resulting lien were created entirely by Defendants' actions without Plaintiff's involvement. Plaintiff had fulfilled his obligations in the property sale at the correct price of $146,000; any paperwork suggesting otherwise was falsified either through gross negligence or intentional misconduct by those handling the transaction and recording.

18. Failure to Correct the Record: Despite the obvious, glaring nature of this error, Defendants failed to correct the public record for an extended period. Plaintiff repeatedly sought to have the

mistake fixed through proper channels. However, for over a year, the deed remained recorded at the false amount and the lien remained in place, continuously damaging Plaintiff. During this time, Dauphin County and its Recorder of Deeds Office took no effective action to investigate or remedy the error, even though the notion of a $146 million residential sale in that area was implausible on its face. This inaction persisted until Plaintiff himself took formal legal action.

19. Efforts to Seek Help from Authorities: Facing stonewalling at the county level, Plaintiff reached out to other authorities in hope of relief. Plaintiff contacted the Pennsylvania Attorney General's Office, the Pennsylvania Bar Association, and the U.S. Department of Justice to file complaints and alert them to the fraudulent lien, the false deed recording, and what he perceived as related misconduct by local officials. Plaintiff detailed how his rights were being violated and sought an investigation or intervention. Despite these efforts, no agency provided a remedy. Plaintiff's grievances remained unaddressed, and the false records continued to stand.

20. Filing of State Court Action: Having exhausted other avenues, Plaintiff turned to the courts. In early 2025, Plaintiff filed a pro se civil complaint in the Dauphin County Court of Common Pleas against several of the parties involved in the real estate transaction and recording (including the Recorder of Deeds Office, ONE Abstract LLC, Dream Home Realty, and Realty ONE Group Unlimited). In that state lawsuit, Plaintiff alleged fraud, misrepresentation, and other wrongful conduct arising from the erroneous deed recording and its fallout. He also provided detailed witness statements and exhibits to support his claims.

21. Correction of Deed (April 2025): Only after Plaintiff's persistent complaints and the filing of legal action was the error finally addressed. On or about April 21, 2025, a Corrective Deed was filed for the property in question (308 Wyoming Street), indicating the true sale price of $146,000 and effectively re-transferring the property to the same buyers under the correct terms. This corrected the official record moving forward. However, this correction came more than a year after the original error, far too late to prevent the harm to Plaintiff. By the time the deed was corrected, Plaintiff's business was already destroyed and his reputation irreparably tarnished.

22. Continued Harm and Lack of Remedy: Even with the deed corrected, Plaintiff had not been compensated for his losses, nor was it clear that the $6,000,000 lien had been fully expunged from all records. Plaintiff remained deeply concerned that remnants of the false information (such as notations of an insanely inflated transaction or any credit reports of the lien) could persist and continue to affect his life. Moreover, Plaintiff's experience had shown that local officials were unresponsive to his plight, prompting him to escalate his complaints.

23. Harassment and Retaliation Begin – Police Involvement: Shortly after Plaintiff filed his court action and continued to press his complaints publicly and with authorities, he began to experience what appeared to be targeted harassment from law enforcement. On May 6, 2025, Plaintiff received an unsolicited phone call from Defendant Officer Morris of the Lower Paxton Township Police Department. This call, made by a uniformed officer in an official capacity, was highly unusual because Plaintiff had not requested police assistance or intervention. The context strongly suggested that Officer Morris's outreach was prompted by Plaintiff's legal activities (his lawsuit and complaints) rather than any legitimate police matter.

24. Phone Call from Officer Morris (May 6, 2025): During the call on May 6, 2025, Officer Morris questioned Plaintiff in a manner that Plaintiff found harassing and intimidating. Officer Morris asked what documents Plaintiff had to support his case and why Plaintiff believed anyone would harm him or conspire against him. The officer's tone was skeptical and dismissive of Plaintiff's claims about the fraudulent deed and lien. Most disturbingly, Officer Morris inquired whether Plaintiff was "mental" or had "any disorders." He directly challenged Plaintiff's sanity, implying that Plaintiff's assertions might be the product of mental illness or paranoia rather than factual wrongdoing. Plaintiff was taken aback by these questions, as they were not only insulting but also irrelevant to the underlying factual issues — unless the goal was to discredit Plaintiff.

25. Officer Morris went further to state that it "sounds like [Plaintiff doesn't] have any documents" to prove his case, and indicated that he would "file it under mental." By this, Officer Morris meant that he intended to categorize Plaintiff's complaints as a mental health issue. This statement was made absent any evaluation or credible basis – Plaintiff was calm, coherent, and simply trying to explain his situation. There was no legitimate reason for a police officer to unilaterally declare a citizen's legal grievance to be a mental health matter. Officer Morris's remark appeared to be a deliberate attempt to trivialize Plaintiff's case and label him delusional, thereby undermining Plaintiff's credibility should he continue to seek help.

26. Officer Morris also pressured Plaintiff to abandon his pro se efforts and hire an attorney, insinuating that Plaintiff was not capable of handling the matter himself. He suggested that Plaintiff should not be pursuing legal action on his own. This was an unusual recommendation coming from a police officer, and Plaintiff perceived it as part of the intimidation — implying that Plaintiff's case was futile or baseless unless a lawyer was involved, and possibly attempting to discourage Plaintiff from persisting on his own.

27. The call from Officer Morris was entirely unsolicited and outside the normal scope of police duties. Plaintiff had not reported a crime on that day; his only "issue" was the civil matter he was already addressing through the courts. The timing and content of the call strongly suggest that Officer Morris (and by extension, Lower Paxton Township Police) contacted Plaintiff in retaliation for his lawsuit and complaints about county misconduct. Rather than investigate Plaintiff's legitimate grievances, the officer's aim seemed to be to intimidate Plaintiff and cast him as mentally unstable.

28. Additional Suspicious Call (May 6, 2025): In a troubling coincidence, also on the morning of May 6, 2025 (around the same time as Officer Morris's call), Plaintiff received a separate phone call from an individual claiming to be from the District Attorney's Office. The caller's number was blocked or untraceable, and the person did not provide verifiable identification. They spoke to Plaintiff about his case in an odd manner, which raised Plaintiff's suspicion that this call was not an official communication, but rather another form of surveillance or harassment. Combined with Officer Morris's direct call, Plaintiff felt that he was being watched and targeted on multiple fronts.

29. Effect of Harassing Communications: The communications from Officer Morris (and the mystery caller) had a profound effect on Plaintiff. He felt fearful and beleaguered — instead of being treated as a victim of a wrongdoing, he was being treated as if he were the problem. The

insinuation that he was "mental" was especially damaging; this false label in law enforcement records could influence how any future complaints or calls for help by Plaintiff are handled (potentially to his detriment). It also echoes the earlier pattern since 2018 where Plaintiff was improperly classified in records as mentally ill. Plaintiff now had confirmation that such false and stigmatizing classifications were actively being used against him as a form of retaliation.

30. Chilling of Plaintiff's Rights: The intimidation by Officer Morris was clearly intended to deter Plaintiff from continuing to pursue his legal rights. A reasonable person in Plaintiff's position might well think twice about proceeding with a lawsuit or speaking further about government misconduct after a police officer suggests they are crazy and essentially threatens to document them as such. Plaintiff, however, refuses to be silenced, and has brought this action to hold all responsible parties accountable and to end the campaign of retaliation and character assassination against him.

31. Suspected Improper Motives and Conspiracy: On information and belief, Plaintiff alleges that the various actors involved – from the real estate companies to the Recorder's Office and the local police – may have been acting in concert or under a shared understanding that Plaintiff's complaints needed to be stifled. The extraordinary error of a $146 million recording and multi-million dollar lien suggests to Plaintiff that more was at play than simple negligence: it is plausible that one or more Defendants stood to gain from inflating the transaction value (for example, to commit tax fraud, money laundering, or to misappropriate funds). Plaintiff suspects that his identity and business information may have been misused in furtherance of some illicit scheme by others, and that once he discovered the error, the responsible parties (or their associates) sought to cover it up or minimize it by discrediting him. These suspicions are bolstered by the unusual level of pushback and harassment Plaintiff faced when he started asking questions and demanding corrections.

32. Exhaustion of Remedies and Ongoing Harm: Plaintiff has exhausted all reasonable avenues to resolve these issues without resorting to this Court. He reported the misconduct to state and federal authorities, filed a lawsuit in state court, and personally pushed for corrections of the record. Despite finally getting the deed corrected, no Defendant has compensated Plaintiff for his losses, and some Defendants (notably Officer Morris and those possibly directing him) have instead retaliated against Plaintiff for shining light on the situation. Plaintiff continues to suffer financial strain (having lost his primary income source) and emotional trauma (from being unjustly labeled and harassed). His ability to obtain employment or rebuild his business has been severely hindered by the damage to his reputation and the lingering fear that authorities view him through a tainted lens.

33. All Defendants, acting under color of law or in concert with those acting under color of law, have thus far deprived Plaintiff of his rights and caused him immense harm, as detailed above. Plaintiff now seeks relief from this Court to redress the wrongs he has suffered, to obtain compensation for his losses, and to ensure that such abuses do not continue.

IV. Causes of Action

Count I – Deprivation of Property Without Due Process of Law

(42 U.S.C. § 1983 – Fourteenth Amendment)

Against Dauphin County Recorder of Deeds Office and Dauphin County

34. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

35. Defendants Dauphin County Recorder of Deeds Office and Dauphin County, acting under color of state law, have deprived Plaintiff of his property interests without due process of law, in violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

36. Plaintiff has a constitutionally protected property interest in his real and personal property, including the real estate he sold and the proceeds thereof, as well as in his business and the right to pursue his occupation free from unlawful governmental interference. Plaintiff also has a right to be free from false liens or encumbrances on his property and credit, absent due process.

37. The actions of the Recorder of Deeds Office (an arm of Dauphin County) in recording a deed reflecting a false $146,000,000 sale price – an action performed under color of law – directly led to the placement of a massive lien and other encumbrances against Plaintiff's property and name. These government actions significantly interfered with Plaintiff's property rights. Plaintiff's ability to use, transfer, and enjoy his property (and the value from the sale of his property) was effectively taken away when the County's records showed an unfounded multi-million dollar liability associated with him.

38. No due process was provided or available to Plaintiff prior to this deprivation. The lien and false record were imposed without any notice or hearing afforded to Plaintiff. He was not informed or consulted when the Recorder's Office accepted the dubious filing, nor when the County (or state) generated an enormous lien. Likewise, after the deprivation began (i.e., after the lien was filed and the error entered into the public record), Defendants failed to provide a prompt and meaningful opportunity to correct the error or to contest the lien. Plaintiff's pleas for correction went unheeded for over a year – a delay that itself is a denial of due process.

39. The Recorder of Deeds Office and, by extension, Dauphin County, had no valid justification or legal authority to record patently false information or to allow a lien of that magnitude to be assessed without verification. Their failure to exercise even minimal due diligence (such as confirming the accuracy of an extraordinarily large transaction) and their failure to inform Plaintiff and allow him to challenge the record deprived Plaintiff of property rights through arbitrary and egregious government action.

40. As a direct and proximate result of this deprivation of due process, Plaintiff suffered significant damages, including: the loss of his business and income, loss of opportunities to use or sell his property, damage to his credit and financial reputation, and severe emotional distress. Plaintiff's right to procedural due process – the right to notice and a hearing before being deprived of property – was violated, entitling him to relief under 42 U.S.C. § 1983.

41. The actions of the Recorder of Deeds Office were undertaken as part of its official function (recording property documents), and thus reflect the conduct of Dauphin County itself. Accordingly, Dauphin County is liable for this Count I violation under principles of municipal liability (as further alleged in Count III below).

Count II – Civil Conspiracy to Violate Civil Rights

(42 U.S.C. § 1983 – First and Fourteenth Amendments)

Against All Defendants

42. Plaintiff incorporates all preceding paragraphs as though set forth fully herein.

43. All Defendants named in this action acted in concert and conspired to deprive Plaintiff of his civil rights, including his right to due process and his right to be free from retaliation for exercising First Amendment rights. In doing so, Defendants jointly engaged in conduct under color of state law, as the private Defendants willfully participated in joint activity with state actors and/or their conduct was sanctioned by state actors.

44. Agreement and Common Plan: There was an agreement or meeting of the minds among Defendants (explicit or tacit) to achieve unlawful objectives at Plaintiff's expense. These objectives included: covering up or facilitating the false real estate records, avoiding liability for the harm caused to Plaintiff, and silencing or discrediting Plaintiff to prevent him from further exposing the wrongdoing. Each Defendant understood that the others were engaging in wrongful acts affecting Plaintiff, and they cooperated in this endeavor.

45. Overt Acts in Furtherance of Conspiracy: In furtherance of the conspiracy, Defendants committed overt acts, including but not limited to:

• Recording and maintaining false documents: Defendants ONE Abstract LLC, Dream Home Realty, and/or Realty ONE Group Unlimited prepared or passed along falsified information (the grossly incorrect sale price) to the Recorder's Office; the Recorder of Deeds Office (and thus Dauphin County) formally recorded that false information and allowed it to persist in the public record.

• Concealment and failure to correct: After the error came to light, Defendants Dauphin County and its Recorder of Deeds Office, as well as the private Defendants involved, failed to swiftly correct the record or to notify authorities, implying a mutual understanding to let the false record stand (thereby concealing any internal error or misconduct that led to it).

• Harassment and intimidation: Defendants Lower Paxton Township and Officer Morris took steps to intimidate Plaintiff once he pursued legal action. The phone call by Officer Morris (described above) was not an isolated action of a rogue officer, but an act done with the knowledge or encouragement of others in furtherance of the conspiracy's goal to undermine Plaintiff's credibility. The suspicious DA-impersonation call further indicates coordination to monitor and harass Plaintiff.

46. Joint Engagement Under Color of Law: The involvement of the Recorder of Deeds Office (a state actor) and Officer Morris (a state actor) provided the "color of law" under which this conspiracy operated. The private Defendants willfully engaged in this joint activity; for example, the title company and realty companies benefited from the Recorder's Office treating the false deed as legitimate, and in turn, those private parties went along with the Recorder's failure to correct the record. Similarly, the police involvement served the interests of those who wanted to deter Plaintiff's complaints, indicating coordination between the police actor and the other Defendants (or persons acting on their behalf).

47. Motivation – Depriving Equal Protection and Due Process: Defendants' conspiracy was fueled by the shared motive to protect themselves (or each other) from the consequences of their wrongful acts, and to deprive Plaintiff of the equal protection of the laws and of due process. By branding Plaintiff as "mental" and not addressing his legitimate grievances, Defendants sought to place Plaintiff outside the protection of the law – effectively attempting to nullify his ability to seek redress by painting him as not credible or not worthy of normal process. This is a deprivation of the equal protection of the laws, as Plaintiff was being treated differently from other citizens (whose valid complaints would not be dismissed as delusions).

48. Injury Caused by Conspiracy: As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered the violations and damages set forth throughout this Complaint. The fraudulent lien and deed recording (Count I violation) and the retaliatory harassment (Count IV violation) were not random mistakes, but interconnected parts of a scheme that succeeded in damaging Plaintiff's property, liberty, and reputation. All Defendants who joined the conspiracy are jointly and severally liable for the harms inflicted on Plaintiff's constitutional rights under §1983.

49. Defendants acted willfully, maliciously, and with callous disregard for Plaintiff's rights in carrying out this conspiracy. Plaintiff therefore not only seeks compensatory relief but also punitive damages against the appropriate Defendants to punish their unlawful concerted conduct (except that no punitive damages are sought against the municipal entities, per law).

Count III – Municipal Liability (Monell Claim)

(42 U.S.C. § 1983 – Policy or Custom Causing Constitutional Violations)

Against Dauphin County and Lower Paxton Township

50. Plaintiff incorporates all preceding paragraphs as though set forth fully herein.

51. Defendants Dauphin County and Lower Paxton Township (the "Municipal Defendants") are liable for the above-described constitutional violations against Plaintiff by virtue of their official policies, customs, and/or deliberate indifference to the need to train and supervise their employees. The unlawful actions of their employees (e.g., the Recorder of Deeds Office staff in the case of Dauphin County, and Officer Morris in the case of Lower Paxton Township) were taken pursuant to, and were proximately caused by, the policies or customs of these Defendants. This Count is asserted under the doctrine established in Monell v. Department of Social Services, 436 U.S. 658 (1978).

52. Monell Liability of Dauphin County: Dauphin County, through its Recorder of Deeds Office and other responsible officials, maintained a policy, practice, or custom of inadequate oversight and correction of property records. The County did not have in place sufficient procedures to catch and rectify obviously erroneous recordings (such as a clearly implausible $146 million residential sale). Alternatively, if such procedures existed on paper, the County failed to train its employees to follow them or to act on red flags. This lack of a proper policy or the failure to train amounts to deliberate indifference to the constitutional rights of individuals like Plaintiff who rely on the accuracy of public records. It was foreseeable that without proper checks, a citizen could be unjustly burdened with a false lien or record and thereby deprived of property rights without due process. Dauphin County's deliberate indifference is evidenced by the fact that even after the error was pointed out, the County allowed it to persist for a prolonged period, indicating a systemic failure rather than a one-time oversight.

53. Furthermore, Dauphin County (through policymakers such as the Recorder of Deeds or County Commissioners) effectively ratified the violation of Plaintiff's rights by failing to take meaningful action once apprised of the situation. This rubber-stamping of subordinates' egregious error and inaction reflects a custom of inaction in the face of constitutional violations, which is tantamount to a county policy. The moving force behind the due process violation (Count I) was thus not only the individual negligence of an employee, but the County's own failure to have or enforce an appropriate policy to safeguard property interests.

54. Monell Liability of Lower Paxton Township: Lower Paxton Township, through its Police Department and final policymakers (such as the Chief of Police or Township Supervisors), maintained one or more of the following unconstitutional policies or customs:

a. A policy or custom of labeling or dismissing certain citizen complaints as mental health issues in order to avoid taking them seriously or to retaliate against the complainant. On information and belief, Lower Paxton officers have, in other instances and as a matter of practice, used derogatory classifications ("mental case" or similar) in police logs or communications when dealing with individuals who persistently complain about government misconduct. In Plaintiff's case, Officer Morris's immediate resort to "filing it under mental" strongly suggests this was an approved or common practice, not an isolated idea he had. The Township's leadership either encouraged this approach or was deliberately indifferent to its use, failing to train officers that such behavior is inappropriate and unconstitutional.

b. A failure to train and supervise officers regarding First Amendment rights of citizens, particularly the right to petition the government and to be free from retaliation. Lower Paxton Township provided inadequate training on how officers should respond to individuals who have filed civil lawsuits or complaints against government entities. The absence of training or policy on this matter led directly to Officer Morris engaging in retaliatory harassment, believing (wrongly) that such conduct was permissible. The Township's indifference to the need for such training amounts to a policy of allowing officers to exercise unfettered discretion in dealing with critics of government, which predictably results in constitutional violations.

c. A failure to discipline or correct officers who misuse their authority to intimidate or disparage citizens. If Officer Morris felt empowered to call Plaintiff and behave as alleged, it is because the

culture or custom within the Lower Paxton Police Department tolerates or even encourages officers to "handle" complainers in this manner. No evidence suggests that, after the May 6, 2025 call, the Township took any corrective action with respect to Officer Morris's conduct — implying tacit approval.

55. The policies/customs of Lower Paxton Township described above were the moving force behind the violation of Plaintiff's First Amendment rights (as alleged in Count IV). Officer Morris's actions were not happenstance; they arose from the environment and instructions (or lack thereof) provided by his employer, the Township.

56. Causal Link: In summary, Plaintiff's constitutional injuries – the property deprivation without due process and the retaliatory harassment – were directly caused by the official policies or entrenched customs of Dauphin County and Lower Paxton Township. But for the municipalities' failures (failure to have proper recording safeguards; failure to rein in or train police officers), the violations would likely not have occurred or would have been swiftly corrected. Thus, the Municipal Defendants are liable under §1983 for the acts of their agents as described, pursuant to Monell and its progeny.

57. Plaintiff notes that he is not seeking to hold Dauphin County or Lower Paxton Township vicariously liable under a respondeat superior theory (as such liability is not available under §1983). Instead, he seeks to hold them liable for their own independent misconduct – their policies, customs, and failures that exhibit deliberate indifference to his rights and that proximately caused the constitutional deprivations he suffered.

Count IV – Retaliation in Violation of First Amendment

(42 U.S.C. § 1983 – Free Speech/Petition Clause via Fourteenth Amendment)

Against Officer Morris (individual and official capacity)

58. Plaintiff incorporates all prior paragraphs as though set forth fully herein.

59. Protected Activity: Plaintiff engaged in activity protected by the First Amendment to the U.S. Constitution, including: (a) filing grievances and complaints with governmental bodies (such as the Pennsylvania Attorney General, Bar Association, and DOJ) to report misconduct – an exercise of his right to petition the government for redress of grievances; and (b) initiating a lawsuit and related complaints in state court concerning the fraudulent lien and deed – also a petitioning activity and a form of speech criticizing government operations; and (c) speaking publicly or to officials about his situation, thereby exercising free speech on a matter of public concern (government misconduct and corruption).

60. Adverse Action: Defendant Officer Morris, acting under color of state law and in the course of his employment with Lower Paxton Township, took adverse action against Plaintiff because of Plaintiff's protected activity. This adverse action included, but was not limited to: harassing phone calls interrogating Plaintiff about his lawsuit, statements impugning Plaintiff's mental stability, threats to classify Plaintiff's legitimate legal case as a mental health issue, and general intimidation aimed at discouraging Plaintiff from continuing to seek redress. Such conduct would

chill or deter a person of ordinary firmness from continuing to engage in the protected activities that Plaintiff was undertaking. Indeed, being labeled "mental" by the police could not only deter a person from further complaints (for fear of not being believed or being involuntarily committed) but also potentially sets the stage for punitive actions against that person (such as unwarranted mental health interventions).

61. Causation: The timing and content of Officer Morris's actions make the retaliatory motive clear. Plaintiff's protected activities – particularly the filing of the lawsuit and complaints – preceded and precipitated the officer's outreach. There was no legitimate law enforcement reason to contact Plaintiff at that juncture; the only reason for Officer Morris's call was Plaintiff's protected expression. Officer Morris even alluded to Plaintiff's filings during the call ("what documents do you have," etc.), directly tying his contact to Plaintiff's court case. Therefore, Plaintiff's exercise of First Amendment rights was a substantial or motivating factor in the adverse actions taken by Officer Morris.

62. Violation of Rights: By subjecting Plaintiff to intimidation and ridicule for engaging in protected speech and petitioning, Officer Morris violated Plaintiff's First Amendment rights (as applied to state actors through the Fourteenth Amendment). Government officials may not retaliate against an individual for speaking out or seeking relief from the government. Plaintiff has a constitutional right to pursue legal action and voice concerns about official misconduct without suffering retribution in the form of threats or character assassination by a police officer.

63. Injuries: As a direct result of Officer Morris's retaliatory conduct, Plaintiff suffered damages including emotional distress (fear, anxiety, and humiliation), reputational harm (as the officer's classification of him as "mental" may be documented in records that could affect how other officials view Plaintiff), and the infringement of his constitutional right to freely seek relief. Plaintiff found the experience distressing and it momentarily made him second-guess the safety of continuing to push for accountability. Nevertheless, Plaintiff refuses to be silenced, which is why he asserts this claim.

64. Municipal Liability: To the extent Officer Morris was acting pursuant to Lower Paxton Township's policies or lack of training (as alleged in Count III), the Township is responsible for the retaliation as well. In his official capacity, Officer Morris's actions reflect the practices of the Lower Paxton Township Police Department. However, for purposes of clarity, this Count seeks damages from Officer Morris in his individual capacity for his intentional misconduct, and seeks injunctive relief against him and the Township to prevent further retaliatory or unlawful actions.

65. State of Mind and Punitive Consideration: Officer Morris's actions were willful, deliberate, and malicious, or at least showed a reckless disregard for Plaintiff's rights. Therefore, in addition to compensatory relief, Plaintiff seeks punitive damages against Officer Morris individually to punish and deter such First Amendment violations (punitive damages are not sought against the Township).

Count V – Negligence

(Pennsylvania Common Law)

Against ONE Abstract LLC, Dream Home Realty, Realty ONE Group Unlimited, Dauphin County Recorder of Deeds Office, and Dauphin County

66. Plaintiff incorporates all prior paragraphs as though fully set forth herein, to the extent they describe the conduct and damages relevant to this claim.

67. The above-named Defendants owed Plaintiff a duty of care under Pennsylvania law. Specifically:

• ONE Abstract LLC had a duty to exercise reasonable care in performing title and closing services for Plaintiff's real estate transaction, including accurately preparing the deed and related filings and ensuring that the correct information (purchase price, parties, etc.) was communicated to the Recorder of Deeds for entry into public records.

• Dream Home Realty and Realty ONE Group Unlimited, as real estate professionals involved in the sale, owed duties of reasonable care and competence in facilitating the transaction. This includes duties such as properly completing any sales documents they were responsible for, conveying accurate information between buyer, seller, and the title company, and generally safeguarding their client's (Plaintiff's) interests in the transaction. Even if their primary duty was to their client (which may have been Plaintiff as the seller, or the buyer, or both), it was foreseeable that a major error in the paperwork could harm Plaintiff, thus imposing a duty to avoid such errors.

• Dauphin County Recorder of Deeds Office (and by extension, Dauphin County) had a duty to the public, including Plaintiff, to correctly record documents and to maintain accurate public records. This duty includes the obligation to exercise reasonable care in reviewing documents submitted for recording and to refuse or flag those that are facially erroneous or suspect. Once the deed with the obviously inflated price was presented, the Recorder's Office had a duty to investigate or at least verify such an extraordinary figure before accepting it as true. After recording, the Office had a duty to correct mistakes in the record in a timely manner once discovered.

68. Breach of Duty: Each of these Defendants breached their duties of care through acts and omissions detailed as follows:

• ONE Abstract LLC (and/or its employees) negligently prepared or processed the deed/transfer tax paperwork for the sale of Plaintiff's property by inputting or allowing an extra three zeros to be added to the sale price. Such a mistake fell below the standard of care expected of a professional settlement agency or title company, which should have robust safeguards and proofreading for such critical figures.

• Dream Home Realty and/or Realty ONE Group Unlimited (through their agents) negligently failed to catch or prevent the error in the sale price. If, for instance, a real estate agent filled out a sales sheet or communicated the price to the title company incorrectly, that was a breach of duty. Even if the error was initially someone else's, a diligent real estate professional reviewing closing documents would reasonably be expected to notice a discrepancy as massive as

$146,000 vs. $146,000,000 and take action to correct it before or at closing. The failure of any agent involved to notice this indicates negligence in the oversight of the transaction.

• The Dauphin County Recorder of Deeds Office negligently accepted and recorded the deed with the patently incorrect amount. A reasonably prudent recorder's office clerk or official would recognize that a $146 million residential sale is outlandish (particularly in Middletown, PA) and at minimum double-check the figure or seek clarification. By simply recording it without question, the Recorder's Office breached its duty of care. Furthermore, once the error was known (no later than 2024 when Plaintiff brought it to their attention), the Recorder's Office breached its duty by failing to timely correct the record or at least mark the record as disputed/under review. This prolonged inaction was a continuing breach, causing compounding harm.

69. Causation: The negligence of these Defendants was the factual and proximate cause of Plaintiff's injuries. But for the negligent misstatement of the price by ONE Abstract LLC (and/or others) and the negligent recording by the Recorder's Office, the $6,000,000 lien would never have been generated and Plaintiff would not have suffered the cascade of financial and reputational damage. It was entirely foreseeable that recording an absurdly high sale price could trigger financial obligations or red flags – that is precisely why accuracy in such records is crucial. Each link in the chain of negligence (agents/title company -> recorder's office -> resulting lien) contributed to causing Plaintiff's losses.

70. Damages: As a direct result of these breaches of duty, Plaintiff suffered substantial damages, including:

• Business losses: Plaintiff's company, Amon's Remodeling LLC, lost its contracts and clientele due to the stigma and credit issues arising from the lien. The company had to be shut down, resulting in lost income and profits that Plaintiff reasonably would have earned but for the Defendants' negligence. This includes the ~$330,000 in revenue from 2022 that could have been expected to continue or grow, and additional lost future earnings.

• Reputational harm: In the construction/home improvement community and among creditors, Plaintiff's name was tarnished by the recorded implication that he was involved in a multi-million dollar deal that went awry or that he somehow owed an enormous debt. This reputational damage has long-term consequences, making others hesitant to do business with Plaintiff.

• Emotional distress: Plaintiff experienced and continues to experience significant stress, anxiety, and humiliation from the situation. Discovering a $6 million lien and dealing with its fallout (and the sense of injustice it carries) took a severe emotional toll. While emotional distress alone might not be the primary measure in a negligence claim, it is a real consequence here of the protracted financial nightmare created by Defendants' errors.

• Expenses and efforts to fix the error: Plaintiff had to spend considerable time, and possibly money, to get the records corrected – including filing a lawsuit, preparing and recording a corrective deed, etc. These costs are attributable to Defendants' negligence.

71. Liability: Under Pennsylvania law, Defendants ONE Abstract LLC, Dream Home Realty, and Realty ONE Group Unlimited are liable for negligence as described. Defendant Dauphin County,

though generally enjoying governmental immunity, may be found liable to the extent an exception applies (for example, if the conduct is deemed willful misconduct, or under any applicable statutory waivers) or via the Recorder's Office's negligence in handling records which could be seen as negligent care of records/property. In any event, Plaintiff pleads Dauphin County's and its Recorder Office's negligence as an alternative theory to its federal claims, to be adjudicated as appropriate.

72. Plaintiff demands judgment against the above Defendants for their negligent acts, in an amount sufficient to compensate all of the aforementioned losses, which well exceed the jurisdictional minimum (Plaintiff has quantified compensatory damages at no less than $2,500,000, as stated in the Prayer for Relief).

Count VI – Gross Negligence

(Pennsylvania Common Law)

Against ONE Abstract LLC, Dream Home Realty, Realty ONE Group Unlimited, Dauphin County Recorder of Deeds Office, and Dauphin County

73. Plaintiff incorporates all preceding paragraphs as though set forth fully herein.

74. The conduct of Defendants described in Count V (negligence) was not merely simple negligence; it rose to the level of gross negligence or reckless indifference to Plaintiff's rights. Gross negligence under Pennsylvania law is defined as a degree of negligence showing substantially more than ordinary carelessness, amounting to a reckless disregard for the rights of others.

75. Reckless Disregard by Private Defendants: The actions of ONE Abstract LLC, Dream Home Realty, and Realty ONE Group Unlimited exhibited a gross deviation from the standard of care. The error of adding $145,854,000 to a sale price is so egregious that it suggests an utter want of scant care. It is hard to imagine such a mistake happening absent extreme carelessness or a systemic failure in processes that any minimally careful professional would have in place. Moreover, failing to notice or correct that error for over a year, even as the consequences unfolded, demonstrates a reckless disregard for the truth of the records and for Plaintiff's well-being. These Defendants effectively abandoned any duty of fidelity or diligence by allowing an error of this magnitude to slip through and remain uncorrected.

76. Reckless Disregard by Recorder's Office: Likewise, the Dauphin County Recorder of Deeds Office's conduct was grossly negligent. Accepting a clearly dubious deed and letting a false multi-million-dollar lien encumber someone without acting is not just a mistake – it bespeaks a wanton indifference to the reality and to the property rights of the citizen involved. Any reasonable person in the Recorder's position would recognize the potential ruinous impact of a $6 million lien and a fantastical sale record on an individual, and thus the failure to address it exhibits reckless indifference. Even after Plaintiff sounded the alarm, the continued delay to fix the record is inexplicable and inexcusable, further underscoring gross negligence.

77. Willful/Malicious Aspect: To the extent evidence shows that any Defendant's conduct was intentional or motivated by malice (for instance, if someone deliberately recorded the wrong amount for ulterior reasons), such conduct would transcend even gross negligence and become willful misconduct. Plaintiff asserts gross negligence in this Count, but to the extent the fact-finder determines any Defendant intentionally caused this harm, Plaintiff reserves the right to argue for liability and damages on that basis as well (which would also defeat any immunity defenses for the governmental actors under 42 Pa.C.S. § 8550, Pennsylvania's willful misconduct exception).

78. Punitive Damages Justification: The gross negligence of Defendants as described was a substantial factor in causing Plaintiff's harm (as detailed previously). Because this conduct was outrageously careless and showed a reckless indifference to Plaintiff's rights, punitive damages are warranted under Pennsylvania law against the private entity Defendants and against Defendant Officer Morris for his intentional acts (noting that punitive damages cannot be recovered against the municipal entities themselves). Punitive damages are intended to punish and deter egregious conduct, and here the conduct – essentially playing fast and loose with a person's property records and then trying to intimidate him when he objected – is egregious.

79. Plaintiff therefore seeks, in addition to compensatory damages, punitive damages on this Count against the appropriate Defendants (ONE Abstract LLC, Dream Home Realty, Realty ONE Group Unlimited, and Officer Morris in relation to his above-described conduct viewed as grossly negligent or willful). The prayer for relief below will specify these requests.

80. All allegations in this Complaint should be read as applying to all Defendants to the extent the context permits. To the extent a Defendant is not directly named in a particular cause of action, they may be implicated through the conspiracy claim or other vicarious liability as applicable. Plaintiff reserves the right to amend this Complaint if discovery reveals further particulars about each Defendant's involvement.

V. Prayer for Relief

WHEREFORE, Plaintiff Jordan A. Branch respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where applicable, and grant the following relief:

A. Compensatory Damages: Award Plaintiff compensatory damages in the amount of $2,500,000 (Two Million Five Hundred Thousand Dollars), or such greater amount as may be proven at trial, to compensate for his economic losses (including lost business revenue, lost income, and costs incurred) and for non-economic damages (including mental anguish, emotional distress, and reputational harm) caused by Defendants' unlawful actions.

B. Punitive Damages: Award punitive damages in an amount to be determined at trial against all individual and private-entity Defendants (i.e., Defendants ONE Abstract LLC, Dream Home Realty, Realty ONE Group Unlimited, and Officer Morris in his individual capacity) and any other Defendant found to have acted willfully or with reckless disregard of Plaintiff's rights. Such an award is warranted to punish Defendants for their outrageous and malicious conduct and to

deter such conduct in the future. (Plaintiff does not seek punitive damages against Dauphin County or Lower Paxton Township, as municipal entities, to the extent not permitted by law.)

C. Declaratory Relief (Fraudulent Records): Issue a declaratory judgment that the deed recorded in or about March 2023 listing a $146,000,000 sale price (pertaining to Plaintiff's former property at 308 Wyoming Street, Middletown, PA), as well as the associated lien of approximately $6,000,000, were fraudulently and erroneously filed, are null, void, and of no legal effect, and that Defendants' recording of such false information without Plaintiff's consent violated Plaintiff's rights. This declaration will establish the truth of the matter and clear any lingering cloud on Plaintiff's name caused by those false records.

D. Injunctive Relief (Removal of False Deed and Lien): Issue a permanent injunction directing Defendants Dauphin County and the Dauphin County Recorder of Deeds Office to immediately expunge, void, or correct any records in their custody that reflect the fraudulent $146,000,000 deed or the resultant lien. This injunctive relief should include, but is not limited to: (1) removing or striking the erroneous deed amount from the official deed registry and replacing it with the correct $146,000 figure (noting the correction to avoid any confusion); (2) formally discharging and removing the $6,000,000 lien from any county or state records so that it no longer appears in any title searches or public databases; and (3) notifying any relevant state agencies (such as the Pennsylvania Department of Revenue or tax authorities) that the prior recorded transaction value was incorrect and should not be relied upon for any purpose (tax, assessment, etc.). The goal of this injunction is to restore the integrity of Plaintiff's property records and free him from any continuing impact of the false filings.

E. Injunctive Relief (Cease False Mental Health Classification): Issue an injunction prohibiting Defendants Lower Paxton Township and Officer Morris, as well as their officers, agents, and employees, from any further action that labels or treats Plaintiff as a person with mental illness in the absence of a proper adjudication or diagnosis. This includes an order to remove or expunge any reference in police records or databases that categorizes Plaintiff as "mental" or as having a psychological disorder that was used to discredit him. Defendants should be required to correct any internal records to reflect that Plaintiff has no known mental health issues and that prior notations suggesting otherwise were unfounded. Additionally, Defendants should be enjoined from retaliating against Plaintiff in any way for pursuing this lawsuit or related complaints – in particular, they must refrain from any harassment, unwarranted surveillance, or dissemination of defamatory statements about Plaintiff's mental state.

F. Additional Injunctive/Equitable Relief: Grant such other declaratory or injunctive relief as may be necessary to ensure Plaintiff's rights are protected. This may include Court oversight or direction to Defendants to implement appropriate training or policies (for example, requiring Dauphin County to implement a procedure for flagging extreme record discrepancies, or requiring Lower Paxton Township to conduct training on First Amendment rights and proper handling of citizen complaints). The Court may fashion any equitable remedies it deems just to prevent future violations similar to those experienced by Plaintiff.

G. Costs and Fees: Award Plaintiff his costs of suit, including court filing fees, costs of service, and any other expenses incurred in pursuing this action. (As a pro se litigant, Plaintiff is not

seeking attorney's fees, but if any statute or rule would entitle him to recover reasonable attorney's fees or expert fees for work done in connection with this case, Plaintiff reserves the right to seek such fees as well to the extent allowed.)

H. Such Other Relief as Deemed Just and Proper: Grant any such further relief as the Court deems just, equitable, and proper under the circumstances. This may include, but is not limited to, leave for Plaintiff to amend his Complaint if needed to conform to the evidence, and any relief to which Plaintiff is entitled in law or equity that has not been specifically requested above.

Jury Demand: Plaintiff hereby demands a trial by jury on all claims and issues in this action that are so triable.

Respectfully submitted,

DATED: May __, 2025.

/s/ Jordan A. Branch

Jordan A. Branch (Pro Se Plaintiff)

2612 Maplewood Drive

Harrisburg, PA 17110

Email: amonsconstruction@gmail.com

Phone: 717-689-6810